NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MAXON, LLC,**

*Plaintiff-Appellant*

**v.**

**FUNAI CORPORATION, INC.,**

*Defendant-Appellee*

---

2017-2139

---

Appeal from the United States District Court for the Northern District of Illinois in No. 1:16-cv-07685, Judge Gary Feinerman.

---

Decided: April 9, 2018

---

MATTHEW MICHAEL WAWRZYN, Wawrzyn & Jarvis LLC, Glenview, IL, argued for plaintiff-appellant.

MARC ROBERT LABGOLD, Marc R. Labgold, P.C., Reston, VA, argued for defendant-appellee. Also represented by PATRICK J. HOEFFNER.

---

Before PROST, *Chief Judge,* HUGHES and STOLL, *Circuit Judges.*

HUGHES, *Circuit Judge*.

Maxon, LLC appeals the district court's finding that U.S. Patent Nos. 8,989,160; 7,489,671; 7,486,649; and 7,171,194 claim ineligible subject matter under 35 U.S.C. § 101. Because the district court did not err in granting Funai Corporation, Inc.'s motion to dismiss, we affirm.

I

The district court found the four patents at issue teach "electronic means of increasing user control over subscription entertainment content." J.A. 1. The parties agree that claim 8 of the '160 patent, claim 6 of the '671 patent, claim 6 of the '649 patent, and claim 8 of the '194 patent are representative of their respective patents. We reproduce only claim 8 of the '160 patent.

> An audio-video device capable of sharing services with a plurality of other devices within a personal network, the audio-video device comprising:
>
> a computer-readable medium having storage for a first address corresponding to the audio-video device, a second address corresponding to the personal network, and a third address corresponding to a service provider network;
>
> input/output logic configured to receive from a user a desired change to a service capable of being provisioned to the audio-video device from at least one service available generally to the personal network;
>
> a processor in communication with the computer-readable medium and the input/output logic, the processor programmed to prepare an inbound signaling word comprising at least the first address and payload data representing the desired change to the service capable of being provisioned to the audio-video device from the personal network; and

a transceiver providing the inbound signaling word to the service provider network where the service provider network comprises logic to process the inbound signaling word including modifying stored information in a subscriber database to effect the desired change to the service capable of being provisioned to the audio-video device from the personal network, the transceiver further receiving an outbound signaling word comprising the first address corresponding to the audio-video device and data indicating the desired change to the personal network, the outbound signaling word responsive to the desired change to the service capable of being provisioned to the audio-video device from the personal network.

'160 patent at col. 14 ll. 31–64.

The physical components of claim 8 are a computer-readable medium, input/output logic, a processor, and a transceiver. The other representative claims include similar physical elements: claim 6 of the '671 patent contains a computer-readable medium, management logic, and a processor; claim 6 of the '649 patent contains a computer-readable medium, management logic, and a processor; and claim 8 of the '194 patent contains a user interface and communications logic.

The district court found all four patents ineligible under § 101. Maxon appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We apply the law of the regional circuit to a district court's grant of a motion to dismiss. *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016). The Seventh Circuit reviews motions to dismiss de novo. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015).

Patent eligibility under § 101 is a legal determination that we review de novo. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014). Under *Alice*, we consider: (1) whether the claims are directed to an abstract idea, and (2) whether the claims contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible concept. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). The use of "wholly generic computer implementation" cannot "transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358.

Maxon concedes that the patents are directed to the abstract idea of "decentralized delivery controlled by the owner of a plurality of devices." Appellant's Op. Br. 11. Accordingly, the only issue before the district court was whether the claims "do significantly more than simply describe the abstract method." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1262 (Fed. Cir. 2016). The court found that they do not.

The district court correctly found that the claims recite only generic computing processes using functional language. Analyzing the physical components of the claims, the district court noted that the specifications do not limit the breadth of elements such as "computer-readable medium," "logic," "processor," or "transceiver." Instead, for example, "computer-readable medium" is defined as "any non-transitory medium that participates directly or indirectly in providing signals, instructions and/or data to one or more processors for execution." '160 patent at col. 2 ll. 55–58. Put another way, the computer-readable medium "could be described as 'something that stores data that a computer can read.'" J.A. 8. Therefore, the district court correctly found that the claims merely recite generic computer elements for their basic functions and thus do not transform the claimed abstract idea into eligible subject matter under *Alice*. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l*

*Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (finding that there is no inventive concept in using a generic computer "to perform well-understood, routine, and conventional activities commonly used in industry").

The district court also correctly found that the ordered combination of the claimed elements is not inventive under *Alice* step two. Analyzing claim 8 of the '160 patent, the court noted:

> [T]he invention consists of some kind of memory capable of identifying the device and the networks to which it is connected, the ability to take instructions and use them in connection with the stored identification data, and the ability to send and receive signals based on the processor's abilities. That describes only the desired result—increased user control over services available to him or her—without describing any *inventive* way that result is reached. The only method of reaching the result the patent teaches is, in essence, use of generic computer components for their standard purposes to achieve the result. Nothing about the order of the elements, or the way they are combined, suggests inventiveness.

J.A. 11–12. We agree that the representative claim does not recite anything beyond the application of routine and conventional computer components. The same principles apply to each of the asserted patents in this case. We have considered Maxon's other arguments and find them unpersuasive. Accordingly, we find that the patents only cover ineligible subject matter.

## III

For the foregoing reasons, we affirm the district court's grant of the motion to dismiss.

**AFFIRMED**